**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                              Chapter 11

AMR CORPORATION, *et al.*,                                          Case No.  11-15463 (SHL)

                                                                    (Jointly Administered)

                          Reorganized Debtors
------------------------------------------------------------------x
JOHN KRAKOWSKI, KEVIN HORNER, and M.
ALICIA SIKES, individually, and on behalf of those
similarly situated,
                                                                    Adv. Pro. No. 13-01283 (SHL)

                          Plaintiffs,

        v.

AMERICAN AIRLINES, INC. and
ALLIED PILOTS ASSOCIATION,

                          Defendants,

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

                          As Intervenor.
------------------------------------------------------------------x

## **MEMORANDUM OF DECISION**

**A P P E A R A N C E S:**

**GREEN JACOBSON, P.C.**
*Counsel for Plaintiffs*
7733 Forsyth Boulevard
Suite 700, Pierre Laclede Center
St. Louis, MO 63105
By:    Allen P. Press, Esq.

**JAMES & HOFFMAN**
*Counsel for Allied Pilots Association*
1101 17th Street, N.W.
Suite 510
Washington, DC 20036
By: Edgar N. James, Esq.
  Steven K. Hoffman, Esq.
  Darin M. Dalmat, Esq.

**STEPTOE & JOHNSON LLP**
*Counsel for Allied Pilots Association*
1330 Connecticut Avenue, NW
Washington, DC 20036
By: Filiberto Agusti, Esq.
  Joshua R. Taylor, Esq.

**PAUL HASTINGS**
*Counsel for American Airlines, Inc. and*
*the other Debtors and Debtors in Possession*
875 15th Street, N.W.
Washington, DC 20005
By: Neil D. Mollen, Esq.
  Todd C. Duffield, Esq.
  Jennifer S. Baldocchi, Esq.

**WEIL, GOTSHAL & MANGES LLP**
*Counsel for American Airlines, Inc. and*
*the other Debtors and Debtors in Possession*
767 Fifth Avenue
New York, New York 10153
By: Harvey R. Miller, Esq.
  Stephen Karotkin, Esq.
  Alfredo R. Pérez, Esq.
  Lawrence Baer, Esq.

**SKADDEN ARPS SLATE MEAGHER & FLOM LLP**
*Counsel for the Official Committee of Unsecured Creditors*
Four Times Square
New York, New York 10036
By: John P. Furfaro, Esq.

-and-

155 North Wacker Drive
Chicago, Illinois 60606
By: John Wm. Butler, Jr., Esq.
  Albert L. Hogan III, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions (the "Motions") to dismiss the complaint in the above-captioned adversary proceeding (the "Complaint"). Plaintiffs John Krakowski, Kevin Horner, and M. Alicia Sikes bring this action on behalf of themselves and all persons similarly situated. They allege that their union, the Allied Pilots Association (the "APA"), breached its duty of fair representation in representing them and other pilots who joined American Airlines, Inc. ("American") when it acquired Trans World Airlines, Inc. ("TWA") in 2001. The Plaintiffs further claim that American colluded with the APA in breaching this duty.

The APA is the collective bargaining representative for all pilots at American, of which the legacy TWA pilots are a relatively small number. When joining American in 2001, these legacy TWA pilots lost all or much of their seniority in the integration of the two work forces. To compensate for this loss, these pilots were given special job opportunities at the St. Louis hub of American. This so-called "protective fence" at St. Louis was eliminated when American decided to close the St. Louis hub as part of its bankruptcy restructuring. The APA and American agreed to appoint an arbitrator to decide how these pilots should be compensated for the loss of the "protective fence" in St. Louis. But the APA and American also agreed that, when awarding relief, the arbitrator would not be allowed to revisit the issue of these pilots' loss of seniority in 2001. The Plaintiffs contend that the APA violated its duty of fair representation by taking seniority off the table as a possible remedy in the arbitration. The Defendants APA and American, together with the Official Committee of Unsecured Creditors as Intervenor, move to dismiss the Complaint for failure to state a claim, contending that the APA's act cannot be arbitrary or discriminatory given the APA's duty to take into account the interests of all APA members. The APA also argues that the Plaintiffs' claims are precluded by collateral estoppel

3

because of prior litigation on these issues. For the reasons stated below, the Court grants the Motions and dismisses the Complaint.[1]

## BACKGROUND

As it must on a motion to dismiss, the Court assumes all the facts in the Complaint to be true. In January 2001, American acquired the assets of TWA. Complaint ("Compl.") ¶ 7.[2] Given this acquisition, American and the APA negotiated how to integrate legacy TWA pilots into the seniority lists for American's pilots. *Id.* ¶ 8.[3] The parties memorialized their agreement on the new seniority terms in Supplement CC, an addendum to the collective bargaining agreement between American and the APA. *Id.* Supplement CC completely subordinated the seniority of about 1,200 legacy TWA pilots to that of all American pilots. *Id.* ¶ 9. For the remaining 1,100 legacy TWA pilots, Supplement CC reduced and reintegrated their seniority with the American pilot seniority list. *Id.* To compensate for this loss of seniority, Supplement CC created a protective "fence" for these legacy TWA pilots around the St. Louis airport, the former hub of TWA's operations. *Id.* ¶ 10. This fence created a minimum number of Captain and First Officer positions at the St. Louis airport and gave legacy TWA pilots preferential bidding for these positions. *Id.* This was beneficial to the legacy TWA pilots because they would face difficulty bidding against American pilots with higher seniority at other airports

---

[1] After the filings of these Motions, the Plaintiffs sought to amend the Complaint to add additional allegations regarding the arbitration, which was not complete when the Motions were filed. *See* Motion for Leave to File Supplemental Complaint (ECF No. 32). For reasons explained at the hearing on these Motions, this decision addresses only the Motions to dismiss the original Complaint. *See* Hr'g Tr., June 13, 2013, 71:15-21 (ECF No. 30).

[2] The Plaintiffs initially filed this case in the United States District Court for the Eastern District of Missouri on May 24, 2012. The case was transferred to this Court in March 2013. The Complaint can be found on the docket of the Missouri court under Case Number 4:12-cv-00954 (JAR).

[3] To understand the instant dispute, it is important to note that seniority "has become one of the cornerstones of American unionism . . . It is one of the chief protections a worker has from management's vagaries, and it preserves the self-esteem and financial security of workers . . . ." *In re Royal Composing Room,* Inc., 848 F.2d 345, 356 (2d Cir. 1988); *see also Naugler v. Air Line Pilots Ass'n, Int'l*, 2008 U.S. Dist. LEXIS 25173, at *44 ("[S]eniority affect[s] virtually every aspect of the pilots' careers, including determining who goes on furlough and who has rights to bid for flying awards.").

4

bases, where TWA Captains could be demoted to First Officer positions, and First Officers would be forced to stand "on call" for several days in a row. Compl. ¶ 11.

The APA has "long desired to terminate Supplement CC." Compl. ¶ 26. A former APA president made promises as part of his election platform to remove the St. Louis fence without restoring seniority to the legacy TWA pilots. Compl. ¶ 26. Despite the perceived hostility against it, Supplement CC remained in effect until American's Chapter 11 bankruptcy in 2011. As part of their efforts to reorganize, the Debtors sought permission to abrogate American's collective bargaining agreement with the APA pursuant to Section 1113 of the Bankruptcy Code. *See* 11 U.S.C. § 1113 (permitting a debtor in possession to reject a CBA if, among other things, it makes a proposal with modifications necessary for reorganization). Ultimately, the Court granted Debtors' application to reject their collective bargaining agreement with the APA. *See In re AMR Corp.*, 477 B.R. 384, 401 (Bankr. S.D.N.Y. 2012); *In re AMR Corp.*, 478 B.R. 599 (Bankr. S.D.N.Y. 2012). In the course of negotiations for a new collective bargaining agreement, the Debtors disclosed their intentions to close the St. Louis hub and eliminate the protective fence created by Supplement CC. Compl. ¶ 13.

During those negotiations, American initially offered to ask an arbitrator to decide a remedy for the legacy TWA pilots with no limit on the arbitrator's authority. Compl. ¶ 29. At the APA's request, however, American removed this from the proposed term sheet. *Id.* Ultimately, the APA and American agreed to submit the question of relief for the legacy TWA pilots to binding arbitration, but to restrict the arbitrator from modifying the legacy TWA pilots' seniority. Compl. ¶ 31.

There has been prior litigation regarding Supplement CC and the protective fence at the St. Louis hub. Shortly after the execution of Supplement CC in 2002, a class action was filed on

5

behalf of legacy TWA pilots against the APA and American, among others. *See Bensel v. Allied Pilots Association*, 271 F. Supp. 2d 616 (D.N.J. 2003).[4] In *Bensel*, the pilots alleged that the APA breached its duty of fair representation by negotiating and executing Supplement CC's seniority integration. *See* Bensel Compl. ¶ 120 (ECF No. 14-2). They alleged that the APA further breached the duty by failing to "negotiate a fair and equitable integration of the TWA pilots" after the National Mediation Board certified the APA as the bargaining representative of the combined American pilots, including the former TWA pilots. Bensel Compl. ¶ 125. The district court granted summary judgment in favor of the APA with respect to the duty of fair representation claim. The court in *Bensel* found that the APA owed no duty to the TWA pilots at the time of negotiation because the APA was not yet the certified bargaining representative for the legacy TWA pilots, and once the APA was their representative, there was "nothing to negotiate" because Supplement CC was already in effect. *Bensel*, 271 F. Supp. 2d at 625, *aff'd in relevant part by* 387 F.3d 298, 312–17.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face."[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007). "However, this does not mean that a claim must contain 'detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss." *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2012 U.S. Dist.

---

[4] The legacy TWA pilots also brought suit against their former union, the Air Line Pilots Association ("ALPA"), which represented them until American's purchase of TWA. The district court granted summary judgment in favor of the ALPA, but the Third Circuit reversed and remanded with respect to that claim. *See Bensel v. Allied Pilots Association* ("*Bensel II*"), 387 F.3d 298, 304 (3d Cir. 2004). The ultimate resolution of that lawsuit is not relevant to this decision.

[5] Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b)(6) into adversary proceedings in bankruptcy.

LEXIS 141281, at *14 (S.D.N.Y. Sept. 28, 2012). In ruling on the motion, a court must "assum[e] that all the allegations in the complaint are true." *Id.* at 555. But courts need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Ultimately, the court must determine "whether the well-pleaded *factual* allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 679) (emphasis added).

In addition to the facts alleged in the Complaint, the Defendants request that the Court take judicial notice of certain documents referenced in the Complaint. More specifically, the Defendants request that the Court take judicial notice of the filings in the *Bensel* case and the record in this Chapter 11 case. *See* Motion at 2, 8 (ECF No. 14); Hr'g Tr., June 13, 2013, 16:20–17:15 (ECF No. 30). Federal Rule of Evidence 201(b) allows a court to take judicial notice of a fact that is not subject to reasonable dispute. Judicial notice is appropriate where a fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *cf. Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("Where [the respondent] has actual notice of all the information in the movant's papers and has relied upon [outside] documents in framing the complaint," the court may rely upon those outside documents in deciding the motion to dismiss without converting the Rule 12(b)(6) motion to a Rule 56 motion). As these documents are of a type appropriate for judicial notice and the Plaintiffs have not opposed this request, Hr'g Tr. 49:13–50:18, the Court will take judicial notice of these documents and consider them in reviewing the Motions.

7

**A.     The Duty of Fair Representation**

Under the duty of fair representation, a union must represent employees adequately, honestly, and in good faith. *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 75 (1991). While the duty of fair representation extends to negotiations between the union and the employer, a court cannot substitute its own views of a proper negotiating strategy for the judgment of the union. *O'Neill*, 499 U.S. at 78. Judicial review of a union's negotiations with the employer must therefore defer to the judgment of the union. *Id.* (the deferential standard "recogniz[es] the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."). But evidence of discrimination, arbitrariness, or bad faith serves to prove that a union violated its duty. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). A plaintiff must also establish that such wrongful conduct caused him or her harm. *Vaughn*, 604 F.3d at 709.

A union's actions are discriminatory if they were "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec., Ry., and Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); *see also Nikci v. Quality Bldg. Servs.*, 2014 U.S. Dist. LEXIS 10323, at *17 n.4 (S.D.N.Y. Jan. 27, 2014) (dismissing complaint for failure to allege the *Lockridge* factors). "There is no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives." *Vaughn v. Air Line Pilots Ass'n Int'l*, 604 F.3d 703, 712 (2d Cir. 2010). The Supreme Court in *O'Neill* found that discrimination in the form of granting one union member seniority over another similarly situated member did not *per se* violate a union's duty of fair representation. *O'Neill*, 499 U.S. at 81. Rather, discrimination is improper where the union prefers or disparages the union members based upon characteristics that are irrelevant to legitimate union objectives. *See Jones v. Trans*

8

*World Airlines*, 495 F.2d 790, 797–98 (2d Cir. 1974) (union membership alone is not proper ground for union to determine seniority); *Wolf Trap Foundation for the Performing Arts*, 287 N.L.R.B. 1040, 1059 (1988) (finding discrimination where union singled out an employee only because she was female and a non-union member).

A union acts in an improperly arbitrary way "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Vaughn*, 604 F.3d at 708 (quoting *O'Neill*, 499 U.S. at 67). Courts must review a union's actions "in light of both the facts and the legal climate that confronted the negotiators at the time the decision was made." *Id.* In hindsight, a union's decision may "appear to the losing employee to have been erroneous," but "tactical errors are insufficient to show a breach of the duty of fair representation." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

To state a claim for bad faith, a plaintiff must allege that the union engaged in fraud, dishonesty, or other intentionally misleading conduct with an improper intent, purpose, or motive. *See Vaughn*, 604 F.3d at 709–10 (cited in Summary Order, *Bejjani v. Manhattan Sheraton Corp.*, No. 13-2860 (ECF No. 69) (2d Cir. May 27, 2014)).

B.  **Counts 1 and 2 Fail to State a Claim**

In Count 1, the Plaintiffs allege that the APA breached its duty of fair representation by agreeing to terminate Supplement CC and to limit any potential relief from altering the seniority of legacy TWA pilots. Compl. ¶ 28. The Plaintiffs contend in Count 1 that "the agreement is the product of APA's hostility toward the former TWA pilots, is facially discriminatory against them, and is so unreasonable as to be arbitrary." Compl. ¶ 28. At the hearing, the Plaintiffs' counsel confirmed their position that, regardless of the result of the arbitration, the agreement

9

itself violated the APA's duty because it precluded restoring seniority as a possible remedy. *See* Hr'g Tr. 44:16–20 (ECF No. 30) ("The Court: Let me ask what the crux of the alleged discrimination is . . . the interest arbitration is problematic before it ever occurs, because it takes [the seniority issue] off the table/Mr. Press: That's true. You've characterized it properly."). Thus, the Plaintiffs' position is that the only satisfactory remedy in arbitration requires modifying the seniority of the legacy TWA pilots. But the Court does not agree.

Reopening seniority affects all pilots at American that are represented by the APA, not just the Plaintiffs. *See* Hr'g Tr. 36:4–6, 36:13–18 ("[S]eniority is a zero sum game . . . if someone's bumped up, someone else goes down."). In deciding whether to allow seniority to be reopened, therefore, the APA necessarily was required to balance the interests of the Plaintiffs and all the other pilots that the APA represents. Based on the allegations in the Complaint, however, it is unclear how the APA's exercise of its discretion on that issue was discriminatory. Courts have recognized that many decisions made by a union require the union to make distinctions among employees, but that these distinctions do not necessarily constitute discrimination. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338–39 (1953) ("Variations acceptable in the discretion of bargaining representatives . . . may well include differences based upon such matters as the unit within which seniority is to be computed, the nature of the work, the time at which it is done . . . ."); *see also Vaughn*, 604 F.3d at 712 ("Without additional evidence that the union intended to discriminate against plaintiffs, the mere fact that older pilots were disproportionally affected is not sufficient to show that the [union] acted in a discriminatory manner."); *Bejjani v. Manhattan Sheraton Corp.*, 2013 U.S.Dist. LEXIS 90467, at *21–22 (S.D.N.Y. June 27, 2013) ("[U]nion actions that reveal good faith trade-offs among employee constituencies do not give rise to [duty of fair representation] claims.").

10

The Plaintiffs' case is further weakened because they complain of a refusal to disturb existing seniority. Here, the APA agreed to arbitration to determine a remedy for TWA pilots who lost the Supplement CC protections, but limited that remedy so as not to reopen seniority issues resolved in 2001. Thus, the APA's actions that are the subject of this lawsuit did not remove the seniority of the legacy TWA pilots; that seniority was lost more than a decade ago. Rather, the APA decided to replicate the job protections of the St. Louis protective fence through an arbitration that does not address seniority. The Plaintiffs have not alleged anything that would allow the Court to infer that the APA intended to unlawfully discriminate against the legacy TWA pilots or that the APA made this decision without some legitimate union objective.

The timing of this case also highlights another problem with the Plaintiffs' claim. The Plaintiffs filed the Complaint before completing arbitration, so there was no result in that process at the time of filing. Prior to completing arbitration, though, the actual harm to the Plaintiffs is speculative, as conceded at the hearing:

> Mr. Press:     If my clients go out into the American Airlines' system, to a different base and try to bid for work, they will not be – existing captains won't be able to fly captain; senior first officers will be on reserve.
>
> The Court:    Well, how do we know any of this, if the interest arbitration hasn't reached a result yet?
>
> Mr. Press:     It's an excellent point, Judge, and I can only say we don't. . . .
>
> The Court:    So the only thing we have thus far is the notion that seniority's been taken off the table, right?
>
> Mr. Press:     True.

Hr'g Tr. 46:15–47:2. For purposes of these Motions therefore, the Plaintiffs are arguing that none of the possible remedies in that process—remedies that presumably include all manner of job protections—could ever be sufficient. Absent more, however, the Court has no basis to

11

conclude that the parameters of the arbitration are a sufficient basis for a claim for unlawful discrimination. Aside from the Plaintiffs' conclusory statements about the APA's acts being discriminatory, therefore, the Complaint lacks factual allegations sufficient to state a claim as to why the APA's position was unrelated to legitimate union objectives or so far outside the range of reasonableness as to be irrational. *See Rothstein*, 708 F.3d at 94 (conclusory allegations are insufficient for proper pleadings); *see also Lockridge*, 403 U.S. at 301.[6]

For these same reasons, the Complaint also fails to sufficiently allege why the APA's actions were arbitrary or in bad faith. Once again, the Complaint's allegations are very general. *See* Compl. ¶ 28 ("This agreement . . . is so unreasonable as to be arbitrary"). The Complaint says only that the arbitration was the product of negotiations between the APA and American. *See* Compl. ¶ 16 (the legacy TWA pilot seniority was one of "dozens of contract items being negotiated by American and APA"); *see also* Compl. ¶¶ 29–32. But the Court must extend "the wide latitude that negotiators need" to all of the items that the APA addressed during the collective bargaining negotiations with American, including the arbitration. *O'Neill*, 499 U.S. at 78. The Complaint here does not allege facts that would plausibly state a claim given the broad latitude that the Court must extend to such collective bargaining negotiations. The Plaintiffs fail to allege any facts that plausibly show that the arbitration, as part of the APA's negotiation strategy, falls "so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67 (internal citation omitted).

Indeed, the Second Circuit has recognized that sending a contentious seniority dispute to arbitration was "an equitable and reasonable method of resolving [the dispute]." *See*

---

[6] The Complaint's only allegation in this regard is that the APA's was hostile to Supplement CC. But that does not suffice, in and of itself, to state of claim that the APA's actions here were discriminatory—that is, unrelated to any legitimate union objective—given that the decision to close the St. Louis hub and end Supplement CC was made by American, not the APA. *See* Compl. ¶¶ 24–26, 28.

12

*Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1107 (2d Cir. 1991) (affirming district court's finding that union fairly represented employees under arbitration agreement). The Plaintiffs have not alleged anything from which the Court can infer that the APA's decision was arbitrary given the factual and legal landscape surrounding that decision. *See Spellacy v. Airline Pilots Association-International*, 156 F.3d 120, 129 (2d Cir. 1998) ("A union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct."); *Bejjani*, 2013 U.S. Dist. LEXIS 90467, at *21 ("[U]nion actions that reveal good faith trade-offs among employee constituencies do not give rise to [duty of fair representation] claims.").

The Complaint is also deficient with respect any claim of bad faith. It does not allege facts that suggest the APA engaged in fraud, dishonesty, or misleading conduct, nor that it was acting with an improper intent, purpose, or motive. *See, e.g., Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 62 (2d Cir. N.Y. 2009) (finding no evidence to infer union acted in bad faith when it chose telephonic voting procedures because the vote was time-sensitive); *Mullen v. Bevona*, 1999 U.S. Dist. LEXIS 16434, at *9 (S.D.N.Y. Oct. 26, 1999) ("Plaintiff has offered the Court no reason to believe that defendant targeted him for inferior treatment, nor that it sought . . . to benefit itself at the expense of its members by providing unlicensed attorneys at grievance hearings.").

Turning to Count 2, the Plaintiffs allege that American colluded with the APA to produce a breach in the union's duty of fair representation. Where a union fails to fulfill its duty of fair representation, an employer may also be liable if the employee can show "that the employer's conduct somehow contributed to the union's breach." *Steffens v. Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express and Station Employees*, 797 F.2d 442,

13

445 (7th Cir. 1986); *O'Mara v. Erie Lackawanna R. Co.*, 407 F.2d 674, 679 (2d Cir. 1969) (if union "acted from a motive to discriminate or with knowledge that the (union) was discriminating," then the plaintiff may hold the employer liable for damages suffered by the plaintiff) (internal citations omitted), *aff'd sub nom*, *Czosek v. O'Mara*, 397 U.S. 25 (1970). But the union's breach of its duty of fair representation is an essential element to establish a claim of an employer's collusion. *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985). As the Court concludes that the Plaintiffs have failed to state a claim that the APA has breached its duty, the Court must also conclude that no claim has been stated against American for collusion. *Id.*

C.   **The Court Declines to Rehear the Issue of Collateral Estoppel**

The APA argues that the Complaint's allegations are barred under the doctrine of collateral estoppel. But given the Court's conclusion above, the Court does not need to decide this issue. The Court does note, however, that this collateral estoppel argument has previously been invoked—and rejected—by the Missouri Court that transferred these proceedings here. Before transferring this dispute to this Court, the District Court for the Eastern District of Missouri heard arguments on this issue and ruled that the action was not barred by collateral estoppel. *See* Memorandum and Order of Judge Ross, Mar. 4, 2013 (ECF No. 1). Given this decision of the Missouri Court, the "law of the case" doctrine would appear to preclude a rehearing of this issue because "when a court decides upon a rule of law, that decision should continue to govern the same issues in the subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (a court may, within its discretion, refrain from reopening a ruling previously made by another judge or another court in the same case).

14

## **CONCLUSION**

      For the reasons stated above, the Court grants the Defendants' Motions and dismisses the Complaint. The Defendants shall settle an order on three days' notice. The parties are directed to confer regarding the proper way to proceed on the pending motion to amend the Complaint. After conferring, the parties shall be prepared to discuss further proceedings at the conference currently scheduled on June 5, 2014 at 2:00PM.

Dated:  New York, New York
         June 3, 2014

                                      */s/ Sean H. Lane*
                                      **UNITED STATES BANKRUPTCY JUDGE**