**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re: Chapter 11

AMR CORPORATION, *et al.*, Case No. 11-15463 (SHL)

(Jointly Administered)

Reorganized Debtors.

---------------------------------------------------------------x

JOHN KRAKOWSKI, KEVIN HORNER, and M. ALICIA SIKES, individually, and on behalf of those similarly situated,

Adv. Pro. No. 13-01283 (SHL)

Plaintiffs,

v.

AMERICAN AIRLINES, INC. and
ALLIED PILOTS ASSOCIATION,

Defendants,

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

As Intervenor.

---------------------------------------------------------------x

**MEMORANDUM AND ORDER DENYING MOTION TO STAY ARBITRATION**

**A P P E A R A N C E S:**

**JACOBSON PRESS & FIELDS, P.C.**
*Counsel for Plaintiffs*
168 N. Meramec Avenue,
Suite 150, Clayton, MO 63105
By: Allen P. Press, Esq.

**JAMES & HOFFMAN**
*Counsel for Allied Pilots Association*
1130 Connecticut Avenue, N.W.
Suite 950
Washington, DC 20036
By: Edgar N. James, Esq.
Steven K. Hoffman, Esq.
Darin M. Dalmat, Esq.

**STEPTOE & JOHNSON LLP**
*Counsel for Allied Pilots Association*
1330 Connecticut Avenue, NW
Washington, DC 20036
By: Filiberto Agusti, Esq.
Joshua R. Taylor, Esq.

**WEIL, GOTSHAL & MANGES LLP**
*Counsel for American Airlines, Inc.*
767 Fifth Avenue
New York, New York 10153
By: Stephen Karotkin, Esq.
Alfredo R. Pérez, Esq.
Lawrence Baer, Esq.

**MORGAN LEWIS & BOCKIUS LLP**
*Counsel for American Airlines, Inc.*
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
By: Jonathan C. Fritts, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Plaintiffs' motion to stay an upcoming arbitration to integrate the seniority of pilots from U.S. Airways and American Airlines, two airlines that merged in December 2013 as part of Debtors' plan of reorganization. The integration arbitration will result in one seniority list to govern all the pilots who now fly at the new merged entity. The integration arbitration is scheduled to start in June 2015 and conclude by December 2015. The Plaintiffs contend that they will be harmed if the seniority arbitration proceeds before this Court resolves the merits of this adversary proceeding and a related adversary proceeding, both of

which allege the improper loss of seniority and other rights by former Trans World Airlines' pilots who joined American when American acquired TWA in 2001.[1] Because the Court concludes that the Plaintiffs have not satisfied the requirement for injunctive relief, including most notably a showing of irreparable harm, the Court denies the motion.

**BACKGROUND**

The background for this dispute is set forth in Plaintiffs' Modified Second Amended Complaint as well as various declarations and documents submitted by the parties in connection with the motion. In considering a motion for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the Court has discretion to rely solely on affidavits, depositions and sworn testimony and, where there exists no sharp factual disputes, may dispense with an evidentiary hearing. *Sec. & Exch. Comm'n v. Vesco*, 358 F. Supp. 1186, 1188-89 (S.D.N.Y. 1973) (citations omitted); *see* Fed. R. Bankr. P. 7065 (Rule 65 of the Fed. R. Civ. P. applies in adversary proceedings). But "bare allegations, without more, are insufficient for the issuance of a preliminary injunction." *Kearney v. N.Y.S.D.O.C.S.*, 2012 WL 5931399, at *2 (N.D.N.Y. Nov. 27, 2012) (citing *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995)).

In April 2001, American acquired the assets of former airline TWA, including its unionized employees. Modified Supplemental Complaint ("MSCompl.") ¶ 1. Given this acquisition, American and its pilots' union, the Allied Pilots Association ("APA"), negotiated an addition to their collective bargaining agreement, entitled "Supplement CC," which provided the terms for integrating legacy TWA pilots into American's pilot seniority list. MSCompl. ¶ 8. Supplement CC completely subordinated the seniority of about 1,200 legacy TWA pilots to that

[1] While the motion was filed only in one adversary proceeding, Case No. 13-01283, the motion also addresses the allegations in a second related action filed by the Plaintiffs, Case No. 14-01920. As the submissions by all the parties address both cases, this decision will do so as well.

of all American pilots. MSCompl. ¶ 9. The seniority of the remaining 1,100 legacy TWA pilots' was reduced by Supplement CC, and they were reintegrated into American's seniority list at their reduced seniority level. MSCompl. ¶ 9. To compensate for this loss of seniority, Supplement CC created a "protective 'fence' in St. Louis," creating minimum Captain and First Officer positions in St. Louis and granting the legacy TWA pilots preferential bidding for these positions. MSCompl. ¶ 10. Thus, while reducing the seniority of legacy TWA pilots put them at a relative disadvantage for purposes of bidding against a much larger number of American pilots for positions on other routes, the protective fence guaranteed a certain number of desired positions on routes from St. Louis with bidding advantages for legacy TWA pilots. MSCompl. ¶¶ 10-11. The protective fence in St. Louis was the only consideration the legacy TWA pilots received for their reduced seniority. MSCompl. ¶ 14.

According to the Plaintiffs, the APA has "long desired to terminate Supplement CC, and the protective fence in St. Louis it provided" for the legacy TWA pilots. MSCompl. ¶ 46. A former APA president allegedly made promises as part of his election platform to remove the St. Louis fence without restoring seniority to the legacy TWA pilots. MSCompl. ¶ 46. American purportedly knew of the APA's hostility toward legacy TWA pilots after May 2012. MSCompl. ¶ 52.

A. The Bankruptcy

After American filed for Chapter 11 bankruptcy in November 2011, the Debtors sought permission to abrogate American's collective bargaining agreement with the APA pursuant to Section 1113 of the Bankruptcy Code. *See* 11 U.S.C. § 1113 (permitting a debtor in possession to reject a CBA if, among other things, it makes a proposal with modifications necessary for reorganization). During negotiations for a new collective bargaining agreement,

American disclosed its intention to "close its St. Louis base and eliminate the protective fence by the end of 2012." MSCompl. ¶¶ 12-13. The legacy TWA pilots contended that either their pre-integration seniority should be restored or the protective fence maintained. MSCompl. ¶ 15. American proposed sending the protective fence issue to arbitration (the "Supplement CC Arbitration"). *Id.* ¶ 53. American subsequently "agreed to APA's demand that the [Supplement CC] arbitrators be powerless to restore the former [legacy] TWA pilots' seniority." MSCompl. ¶ 53. Thus, the "APA, in collusion with American, agreed that American [could] close the St. Louis base, and that . . . an arbitrator [would] decide what if any protection should be afforded to the" legacy TWA pilots, but "under no circumstance may the arbitrator modify the [legacy] TWA pilots' seniority at American." MSCompl. ¶ 15.

In September 2012, American obtained authority to reject its existing collective bargaining agreement. MSCompl. ¶ 17. American eventually sought authority to enter into a new collective bargaining agreement with the APA and to approve related side letters, including Letter of Agreement ("LOA") 12-05. MSCompl. ¶ 19. During a Court hearing on these requests, the APA and American stated to the Bankruptcy Court that, "while LOA 12-05 precluded the arbitrators from modifying the seniority list, their [APA and American's] intent was that the arbitrators would 'replicate' the job protections for former [legacy] TWA pilots created by Supplement CC." MSCompl. ¶¶ 18-19, 22.

B. Litigation Over Supplement CC

There has been substantial litigation regarding Supplement CC and the protective fence at the St. Louis base. Shortly after the execution of Supplement CC way back in 2002, a class action was filed on behalf of legacy TWA pilots against the APA and American, among others. *See Bensel v. Allied Pilots Ass'n.*, 271 F. Supp. 2d 616 (D.N.J. 2003), *aff'd in part, rev'd in part*,

387 F.3d 298 (3d Cir. 2004).[2] In *Bensel*, the pilots alleged that the APA breached its duty of fair representation by negotiating and executing Supplement CC's seniority integration. *See* Bensel Compl. ¶ 120 [ECF No. 14-3, Ex. 1]. They alleged that the APA further breached the duty by failing to "negotiate a fair and equitable integration of the TWA pilots" after the National Mediation Board certified the APA as the bargaining representative of the combined American pilots, including the former TWA pilots. Bensel Compl. ¶ 125. The district court granted summary judgment in favor of the APA with respect to the duty of fair representation claim. *Bensel*, 271 F. Supp. 2d at 626. The court in *Bensel* found that the APA owed no duty to the TWA pilots at the time of negotiation because the APA was not yet the certified bargaining representative for the legacy TWA pilots, and once the APA was their representative, there was "nothing to negotiate" because Supplement CC was already in effect. *Id.* at 625, *aff'd in relevant part by* 387 F.3d at 312-17.

Supplement CC also became the subject of litigation in two adversary proceedings in this bankruptcy. Plaintiffs' original complaint in this case, Case No. 13-01283 ("Krakowski I"),[3] alleged that the APA breached its duty of fair representation by agreeing with American to take seniority off the table as a possible remedy in the Supplement CC Arbitration, regardless of the results of that arbitration. *See Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 2014 WL 2508729, at *1 (Bankr. S.D.N.Y. June 3, 2014). In June 2014, however, this Court granted APA and American's motions to dismiss the original complaint. *Id.* at *6. In that decision, the Court concluded that the Plaintiffs had not alleged facts to plausibly show that the seniority restriction

[2] The legacy TWA pilots also brought suit against their former union, the Air Line Pilots Association ("ALPA"), which represented them until American's purchase of TWA. The ultimate resolution of that lawsuit is not relevant to this decision.

[3] The Plaintiffs initially filed Krakowski I in the United States District Court for the Eastern District of Missouri on May 24, 2012. The case was transferred to this Court in March 2013. The Complaint can be found on the docket of the Missouri court under Case Number 4:12-cv-00954 (JAR).

on the Supplement CC Arbitration—in and of itself—fell outside the APA's legitimate union objectives, particularly given that the Plaintiffs' seniority was lost more than a decade before when American acquired TWA. *Id*. at *4-5.

After the dismissal, the Plaintiffs filed a new complaint, alleging ten different breaches of the duty of fair representation. MSCompl. ¶¶ 48(A) through 48(J). These alleged breaches cover three general categories: 1) failure to bargain about the termination of Supplement CC and agreeing to terminate Supplement CC without securing equivalent job protections; 2) precluding the Supplement CC arbitrators from addressing seniority and failing to pursue something to "replicate" the Supplement CC job protections; and 3) claims that the Supplement CC Arbitration was not procedurally appropriate or fair, including problems with the selection of the arbitrators, the participants, and the lawyers. *Id*.

In addition to the new complaint in this case, the Plaintiffs filed another action, Case No. 14-01920 ("Krakowski II").[4] In that case, Plaintiffs alleged a "hybrid" claim for breach of the new collective bargaining agreement and the related duty of fair representation. *See Amended Class Action Complaint* ("KIICompl.") ¶¶ 32-50 [Krakowski II, ECF No. 1-9]. More specifically, Plaintiffs alleged that APA and American violated the new collective bargaining agreement by using the same seniority list used under the prior collective bargaining agreement, rather than tying the Plaintiffs' seniority to their dates of hire at TWA. KIICompl. ¶¶ 33-37, 49-50.

The final factual piece to this puzzle is the upcoming seniority arbitration. The goal of that process is to create an integrated seniority list for all pilots at the new merged airline, rather

[4] The Plaintiffs initially filed Krakowski II in the United States District Court for the Southern District of New York on May 1, 2013. The case was transferred to this Court in March 2014. Krakowski II [ECF No. 1-9] ("KIICompl.").

than continue to use multiple lists.[5] Decl. of Beth Holdren ¶ 14 [ECF No. 68-1] ("[T]he airlines, as a practical matter, must continue to schedule pilots by using three separate seniority lists . . . . Completion of the seniority integration arbitration process will provide stability in labor relations and allow the combined airline to fully integrate its workforce."). This pilot seniority arbitration was contemplated by the Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement ("MOU") that was entered in early 2013 in anticipation of the merger by the airlines and unions involved. Holdren Decl. ¶ 7 and Ex. A [ECF No. 68-1]. The MOU provides that the seniority integration process shall begin as soon as possible after the close of the merger, including through final and binding arbitration if necessary. Holdren Decl. ¶ 9.[6] It also provides that the seniority integration process must conclude by December 9, 2015, which is 24 months after the merger. Id. ¶ 9. According to the MOU, the carriers shall remain neutral regarding the order of seniority for pilots. Id. ¶¶ 9, 13. The MOU also provides that the seniority arbitration shall not modify the decision of the Supplement CC Arbitration. *See* MOU ¶ 10.i ("Nothing in this Paragraph 10 shall modify the decision of the arbitration panel in Letter of Agreement 12-05 of the 2012 CBA."). The parties to the seniority arbitration have reached an agreement on most of the procedural ground rules, including that the arbitration hearing will

---

[5] There appear to be three lists currently in use, one each for 1) American pilots; 2) U.S. Airways pilots; and 3) pilots of America West, who have not yet completed their seniority integration after being purchased/merged with U.S. Airways in 2005. Prelim. Inj. Hr'g Tr. 29:17-22, Apr. 15, 2015 (Counsel for American Airlines, Mr. Jonathan Fritts: "There are at present three separate seniority lists; the American seniority list and then the two U.S. Airways East and West list.); American Airlines' Objection to Motion to Stay Arbitration [ECF No. 68] ("Moreover, the integration process will also resolve an existing seniority dispute between US Airways and America West pilots, which has prevented those airlines from realizing the synergies of their merger in 2005.")

[6] The pilot seniority integration process is being done pursuant to the McCaskill-Bond Act, 49 U.S.C. § 42112, which generally provides that "a transaction 'for the combination of multiple air carriers into a single air carrier' requires the combined business to merge the seniority lists of the two carriers' employees," to promote a fair and orderly integration. *See Comm of Concerned Midwest Flight Attendants for Fair & Equitable Seniority Integration v. Int'l Bhd. of Teamsters Airlines Div.*, 662 F.3d 954, 955 (7th Cir. 2011); 49 U.S.C. § 42112, note § 117.

commence on June 29, 2015, and continue on eighteen additional hearing days scheduled through October 16, 2015. Holdren Decl. ¶¶ 10-11.

**DISCUSSION**

To prevail on a motion to stay arbitration, a party must satisfy the requirements for injunctive relief. *See Niagara Hooker Emps. Union v. Occidental Chem. Corp.,* 935 F.2d 1370, 1377-78 (2d Cir. 1991); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013) ("When evaluating whether a stay [of arbitration] may be granted, courts look to the preliminary injunctions standard."). To obtain a preliminary injunction, a plaintiff must ordinarily make four showings: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if relief is not granted; (3) the balance of equities tips in the plaintiff's favor; and (4) the public interest favors the relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, -- F. Supp. 3d --, 2014 WL 7399041, at *10 (S.D.N.Y. Dec. 30, 2014). A party's burden on the first factor may be lessened if the plaintiff shows that "the balance of hardships tips *decidedly* in its favor." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (emphasis in original) (internal quotation marks omitted). But even if a movant makes that showing, it must still show "serious questions going to the merits." *Id.*; *but see Victorio v. Sammy's Fishbox Realty Co., LLC*, 2014 WL 7180220, at *3 n.2 (S.D.N.Y. Dec. 12, 2014) (noting that lessening of the likelihood-of-success factor may be inconsistent with *Winter*, which can be read to require a showing that the movant is more likely than not to prevail on the merits).

"Injunctive relief 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Air Line Pilots Ass'n*

*v. U.A.L.*, 2011 WL 4543820 at *1 (E.D.N.Y. Sept. 29, 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

In analyzing the present motion, we start with irreparable harm. To establish irreparable harm, a movant must "demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (quoting *Consol. Brands, Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986)). The Plaintiffs' two lawsuits seek increased job protections and seniority for these former TWA pilots. As a general matter, therefore, the two cases are related to the seniority arbitration scheduled to begin next month for all pilots now flying at American. But the Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent a stay of the seniority arbitration. More specifically, Plaintiffs have failed to demonstrate that proceeding with the seniority arbitration will preclude them from receiving the relief they seek in their two cases.

The Plaintiffs categorically state that "it would be impossible for the Court to enforce a judgment in the Krakowski cases without also setting aside the [seniority] arbitration decision." Pls. Br. at 13. But they don't explain why that would be true. Indeed, both the APA and American strenuously contend otherwise. As to the Supplement CC Arbitration at issue in Krakowski I, the APA states that "preferential flying opportunities of the kind in Supplement CC could be created after a seniority integration just as easily before it." APA Br. at 15. The APA correctly notes that the Plaintiffs fail to identify why the injunctive relief sought by the Plaintiffs could not be crafted after the seniority lists are merged. *Id.* Indeed, the agreement establishing the seniority arbitration specifically provides that it will not modify any decision reached in the Supplement CC Arbitration, *see* MOU ¶ 10.i, further confirming the separateness of the Supplement CC Arbitration from the seniority arbitration.

The same problem plagues Plaintiffs in Krakowski II. American notes that while the seniority arbitration will determine the integrated seniority list, it will not determine the placement of the former TWA pilots on the pre-merger American list. American Br. at 9. The requested relief in Krakowski II would at best result in adjustments of the Plaintiffs' placement on the seniority list of American, which presumably could be translated onto any final integrated seniority list reached during the seniority arbitration. *Id.* at 9-10.

Plaintiffs compare the present situation with the one in *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199 (E.D.N.Y. 2013). Plaintiffs claim that, as in *Allstate*, an arbitration ruling here may create a "procedural and substantive trainwreck." Pls. Br. at 12. But the *Allstate* case is distinguishable. In *Allstate*, the pending litigation and arbitrations raised the same issues, and involved the same parties, such that "a determination in [the court] action would probably dispose of the main controversies in all of the arbitration proceedings." *Allstate*, 929 F. Supp. 2d at 217–18. By contrast, the results of the seniority arbitration here will not determine whether APA breached its duty to the former TWA pilots in the Supplement CC Arbitration nor will it dictate the seniority of these former TWA pilots on the pre-merger American list. Conversely, the resolution of these two cases will not resolve the question of how the American pilot seniority list should be integrated with that of U.S. Airways. At most, Krakowski I and II could alter the seniority placement of some former TWA pilots relative to other pilots at American or address other job protections that might be appropriate for these former TWA pilots.

While the Plaintiffs submit evidence in support of their motion, the evidence relates to the merits of their positions in Krakowski I and II, not to their ability to obtain relief if the seniority arbitration proceeds. *See, e.g.*, Decl. of Douglas J. Gabel [ECF No. 71-1]; Decl. of Kevin Horner [ECF No. 71-5]; Decl. of David Williams [ECF No. 71-6]. And while Plaintiffs

complain that the result of the seniority arbitration would be to confirm the very situation they challenge in litigation, *see* Reply at 2, this has little to do with irreparable harm, which should focus on whether seniority arbitration would foreclose the relief Plaintiffs seek in these two cases. Indeed, Plaintiffs do not challenge the notion that the seniority arbitration results could be adjusted to reflect the results of these lawsuits. Rather, they maintain that this is insufficient to avoid the irreparable harm of the "diminished quality of life most of the former TWA pilots suffer as a result of their unfair placement on the seniority list." *Id*. at 3. But under this flawed theory, a party would suffer irreparable harm simply by not receiving the ultimate relief requested in litigation, regardless of whether such relief would be available later. This is simply not the law. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (must show "continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation.") (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS,* 523 F.2d 79, 81 (2d Cir. 1975)).

Given the failure to demonstrate irreparable harm, Plaintiffs are not entitled to injunctive relief. *See Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) (affirming denial of preliminary injunction where movant "fail[ed] to produce any evidence of irreparable harm, other than the conclusory statement of its president"); *Sunni, LLC v. Edible Arrangements, Inc.*, 2014 WL 1226210, at *10 (S.D.N.Y. Mar. 25, 2014) (denying preliminary injunction where "Plaintiffs' only evidence of irreparable harm is [a plaintiff's] syllogistic testimony"); *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 435 (N.D.N.Y. 2007) (denying preliminary injunction where a plaintiff presented a strong case for success on the merits but "presented insufficient evidence of irreparable harm").

But an evaluation of the remaining requirements also does not support Plaintiffs. Given the lack of irreparable harm to the Plaintiffs, the balance of the hardships does not support the requested relief because there is a clear benefit to the new American in proceeding with the seniority arbitration particularly given the time invested in that process. *See* Holdren Decl. ¶¶ 12-14; Decl. of Mark R. Myers, ¶¶ 6-7, 14-24. Similarly, the public interest does not appear to favor either side.

Finally, the Plaintiffs have not demonstrated a likelihood of success on the merits. As a threshold matter, there is a steep burden for proving a violation of the duty of fair representation: while the duty of fair representation extends to negotiations between the union and the employer, a court cannot substitute its own views of a proper negotiating strategy for the judgment of the union. *In re AMR Corp.*, 2014 WL 2508729, *3 (the deferential standard of review "recogniz[es] the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.") (citing *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 78 (1991)). Moreover, it is difficult to assess the merits of the Plaintiffs' fair representation claim based on the information currently before the Court, which does not include any information about the actual results of the Supplement CC Arbitration. As the Second Circuit has noted in assessing when a duty of fair representation claim accrues, the ultimate results of the process are relevant to assessing the impact of the alleged breach. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989) (noting that in hybrid breach of duty of fair representation action, the court must focus on whether there was a substantial reason to believe that the breach contributed to an erroneous outcome, and such an inquiry presumes that the employee has been harmed by the outcome in a completed arbitration proceeding). And last but not least, the Court notes that the limited evidence before the Court on the merits appears to favor neither side.

*Compare* Gabel Decl. (stating that goal of LOA 12-05 was to replicate Supplement CC and that the Supplement CC Arbitration has not achieved that goal); Horner Decl. (asserting that there was no way for individual pilots to object to the arbitrator chosen for Supplement CC Arbitration); Williams Decl. (arguing former TWA pilots were misled to believe ad hoc committee and its counsel would be advocates for former TWA pilots, but those selected to serve were in fact critics) *with* Decl. of James Dillard, ¶¶ 4-8 [ECF No. 36-1] (APA determined that prudent course was to let three neutral arbitrators decide the protections available to former TWA pilots if Supplement CC was eliminated); Decl. of Keith Wilson, ¶ 2 [ECF No. 36-3] (former TWA pilot on APA board reviewed, edited and approved draft language for Supplement CC Arbitration agreement); Decl. of Edgar James, ¶¶ 2, 4, 6, 7, 8, 10 [ECF No. 36-2] (arbitrators were chosen without objection and two of the three were suggested by Capt. Gabel, who was point person chosen by former TWA pilots to speak on matters relating to closure of St Louis base); *Id*. at ¶¶ 13-16 (Capt. Gabel led TWA pilots committee in Supplement CC Arbitration, he suggested pilots who were appointed on his committee, and the committee chose its own counsel).

## CONCLUSION

For all the reasons set forth above, the Court denies the Plaintiffs' request for a preliminary injunction.

Dated: New York, New York
May 19, 2015

***/s/ Sean H. Lane***
UNITED STATES BANKRUPTCY JUDGE